# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

United States of America,

                                   Case No. 1:18-cr-00318

v.

                                   Michael L. Brown

Fernando Crawford (2),          United States District Judge

          Defendant.

_____/

## ORDER

The United States charged Defendant Fernando Crawford with embezzling funds from Flood Brothers, Inc., his wife's former employer. As the FBI arrested Defendant for this embezzlement, he gave a statement to two FBI agents. Defendant now moves to suppress that statement. (Dkt. 78.) The Magistrate Judge recommends denying Defendant's motion to suppress. (Dkt. 106.)

## I. Background

Defendant's wife, Leena Awad, worked for Flood Brothers as a payroll and Human Resources specialist. (Dkt. 1 ¶¶ 2–4.) She allegedly added Defendant to Flood Brothers' payroll, which led him to receive

checks, even though Flood Brothers never employed him. (*Id.* ¶¶ 7–9.) Defendant also allegedly completed an affidavit in support of an immigration application Ms. Awad submitted, in which he represented that Flood Brothers employed him as a Senior Project Manager. (*Id.* ¶ 16.) A grand jury indicted Defendant for wire fraud, conspiracy to commit wire fraud, and false swearing in an immigration matter. (*See id.*)

At a hearing before the Magistrate Judge, FBI Special Agent Paul Fike testified about arresting, *Mirandizing*, and interviewing Defendant in August 2018. (Dkt. 100 at 4–5.) He explained that after placing Defendant under arrest and handcuffing him, he and another agent placed Defendant in the back seat of their car and put on his seatbelt. (*Id.* at 6–7.) Special Agent Pike sat with Defendant in the back of the car while the other agent drove. (*Id.* at 8–9.) The agents interviewed Defendant while driving to the federal courthouse for processing. (*Id.* at 7–8.) Before interviewing him, Special Agent Pike read Defendant his *Miranda* rights from a script prepared by the FBI. (*Id.* at 10–12.) Defendant orally confirmed that he understood and waived his *Miranda* rights. (*Id.* at 10.) The agents asked him about supporting his wife's

immigration application and showed him an immigration form that he signed. (Dkt. 109 at 2.)

During the interview, the agents were calm and professional — their tone was conversational, they did not threaten Defendant, they did not show their weapons, and they did not promise him any benefit for answering questions. (Dkts. 100 at 12, 15; 95.) After around ten minutes, Defendant stated he no longer wanted to answer questions. (*Id.* at 10.) The interview resumed a few minutes later, but the government does not seek to use that part of the interview. (*Id.* at 13; Dkt. 106 at 6.)

## II. Legal Standard

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1); FED. R. CRIM. P. 59; *Williams v. Wainwright*, 681 F.2d 732, 732 (11th Cir. 1982) (per curiam). A district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). A district judge should consider those issues to which a party makes specific objections. *Jeffrey S. v. State Bd. of Educ.*, 896 F.2d

507, 512 (11th Cir. 1990). For those findings and recommendations to which a party has not asserted objections, the court must conduct a plain error review of the record. *See United States v. Slay*, 714 F.2d 1093, 1095 (11th Cir. 1983).

## III. The Magistrate Judge's Findings

The Magistrate Judge first outlined the admissibility standard for in-custody statements. For an in-custody statement to be admissible, the suspect must have "'in fact knowingly and voluntarily waived [his *Miranda*] rights' when making the statement." *Berghuis v. Thompkins*, 560 U.S. 370, 382 (2010) (quoting *North Carolina v. Butler*, 441 U.S. 369, 373 (1979)).

These rights include the right to remain silent and the right to an attorney. *See Miranda v. Arizona*, 384 U.S. 436, 444–45 (1966). There are two elements of a *Miranda* rights waiver:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.

*Morgan v. Burbine*, 475 U.S. 412, 421 (1986). Along with a proper waiver, the suspect must voluntarily give the in-custody statement. *United*

4

States v. Jones, 32 F.3d 1512, 1516 (11th Cir. 1994) ("Determining the admissibility of a postarrest confession requires a two-part inquiry. We first decide whether the law enforcement officers complies with the requirements of *Miranda v. Arizona*; if so, we then determine if the confession was voluntary." (internal citation omitted)). "Voluntariness of statements is analyzed similarly to voluntariness of the *Miranda* waiver." *United States v. Byrd*, No. 1:16-cr-315, 2017 WL 3821696, at \*5 (N.D. Ga. Aug. 7, 2017).

The Magistrate Judge first found Defendant's waiver of *Miranda* rights knowing and voluntary. The Magistrate Judge reasoned the agents read from a script, Defendant said he understood his rights, and there is no indication or argument he did not understand the waiver of his *Miranda* rights. (Dkt. 106 at 8–9.) Then, finding the waiver voluntary, the Magistrate Judge noted the FBI agents made no threats or promises to elicit the confession. (*Id.*) Defendant does not object to this finding. The Court agrees with and adopts the Magistrate Judge's reasoning and conclusions.

The Magistrate Judge then found Defendant voluntarily gave his statement to the FBI agents. The Magistrate Judge reasoned that the

FBI agents' conduct was not threatening, as shown by Defendant exercising his right not to answer questions. (*Id.* at 9.) Defendant argued that being restrained in the backseat made his confession involuntary. The Magistrate Judge rejected this argument because being handcuffed and seat-belted does not, on its own, create a coercive environment. (*Id.* at 10 (citing *Shriner v. Wainwright*, 715 F.2d 1452, 1456 (11th Cir. 1983) ("The use of handcuffs does not establish coercion . . . ."); *United States v. Ogden*, 572 F.2d 501, 502 (5th Cir. 1978) ("The fact that defendant was wearing handcuffs does not indicate or even suggest he was coerced."))

Defendant also argued that the FBI agents implying consequences about his wife's immigration status was coercive. Showing Defendant immigration forms, he argued, placed his wife's immigration status at issue, making the confession involuntary. The Magistrate Judge rejected this argument for two reasons. First, the Magistrate Judge found that since the agents did not refer to Ms. Awad's immigration status, they did not threaten to deport her, and thus did not coerce him. (Dkt. 106 at 11.) Second, even if the agents alluded to Ms. Awad's deportation, advising a suspect of potential penalties upon conviction does not make a statement involuntary. (*Id.* at 11–12 (citing *United States v. Nash*, 910 F.2d 749,

753 (11th Cir. 1990) ("[T]elling the [defendant] in a noncoercive manner of the realistically expected penalties and encouraging [him] to tell the truth is no more than affording [him] the chance to make an informed decision with respect to [his] cooperation with the government." (alterations in original) (quotation omitted))).

Defendant also argues the agents threatened him by bringing up his potential perjury. The Magistrate Judge dismissed this argument, finding the agents did not refer to perjury in a threatening manner, reasoning that Defendant even felt able to end the interview. (Dkt. 106 at 12–13.)

## IV. Defendant's Objections and Analysis

Defendant objects to two parts of the R&R. He first claims that under the totality of the circumstances — specifically, being handcuffed and in the car next to two FBI agents — his confession is involuntary. *See Dunkins v. Thigpen*, 854 F.2d 394, 398 (11th Cir. 1988) ("Only if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived."). As the Magistrate Judge correctly found, the handcuffs and seatbelt do not, on

7

their own, render a confession involuntary. *See Shriner*, 715 F.2d at 1456; *Ogden*, 572 F.2d at 502. Special Agent Pike's testimony supports the Magistrate Judge's findings. The agents also recorded their interview. That recording corroborates Special Agent Pike's testimony that he *Mirandized* Defendant, treated him respectfully, and did nothing to threaten, intimidate, or coerce him. Given the agents' tone, professional and conversational, the Court finds the totality of the circumstances did not make Defendant's confession involuntary. Defendant cites no case law that would suggest otherwise.[1]

Second, Defendant objects to the Magistrate Judge's finding that the agents referring to Ms. Awad's immigration status did not make Defendant's confession involuntary. But, as the Magistrate Judge pointed out, informing a suspect of potential consequences does not render a confession involuntary. *See Nash*, 910 F.2d at 753. Defendant again cites no case law that would suggest otherwise. The Court

---

[1] Defendant cites two cases. *See Schneckloth v. Bustamonte*, 412 U.S. 218 (1973) (considering the implied consent to a search) and *Thigpen*, 854 F.2d 394 (considering the effect of intellectual disability upon a waiver of *Miranda* rights). Neither case supports Defendant's arguments.

8

overrules Defendant's objections and adopts the R&R. The Court denies Defendant's Motion to Suppress.

## V. Conclusion

The Court **OVERRULES** Defendant's objections (Dkt. 109), **ADOPTS** the Magistrate Judge's Report and Recommendation (Dkt. 106), and **DENIES** Defendant's Motion to Suppress (Dkt. 78).

**SO ORDERED** this 7th day of November, 2019.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE